Case number 20-2594, Southern Iowa, United States v. Isaiah Henderson. Thank you. Ms. Quick. May it please the court. Mr. Henderson challenges his conviction and sentence after a jury trial for being a felon in possession of a firearm. He challenges the sufficiency of the evidence as well as the increase to his base offense level. I will reserve two minutes for rebuttal. Starting first with the sentencing challenge. The district court erred by increasing his base offense level based upon two prior convictions, an Iowa delivery of a controlled substance conviction and an Illinois delivery of a controlled substance conviction. Turning first to the Illinois specific challenge, Mr. Henderson's Illinois statute of conviction is overbroad and does not qualify as a controlled substance offense under the guidelines because it criminalizes substances not covered by the guideline definition. Under Sanchez-Garcia, controlled substances is defined under the Controlled Substances Act under federal statute. Sanchez-Garcia is binding on this. Ms. Quick, I've got a pretty specific question on this point based on my reading of the cases that both counsel have cited. The Seventh Circuit in Ruth addressed an 851 situation and said that the federal definition controls and on that claim there was overbreadth. But then it specifically followed the guidelines on the state offense issue. Joining, they held the defendant was properly convicted as a career offender joining the Sixth Circuit and the Eleventh Circuit and noting that our Garcia opinion seemed to be contrary, although Garcia didn't address the issue. Then Oliver, our latest case, followed Ruth with respect to section 851 without citing our decision in Jones. So, Jones was a guidelines case as this one is. The analog in Illinois law was the same as the analog in the federal statute so the defendant loses. This issue is a little different. But my question is if Oliver's interpretation of Ruth is controlling, which means both of its interpretations of the guidelines in 851 and Garcia did not address the state offense issue, seems to me we firm on this Illinois conviction point. I would disagree with that your honor and what the Oliver decision. I wanted to hear your, I was confident of that. I wanted to hear how you would take down this fortress. So the Oliver decision, it addressed the 851 argument and that argument is instructive for this court as far as whether the substance is overbrought and dealing with 851s and that's what the Eighth Circuit was relying upon in Oliver. But Oliver didn't involve any challenge to the guidelines. So it didn't address whether Ruth was controlling on the guideline issue. That wasn't part of the Oliver decision. And as the Ruth decision acknowledges, there's two different frameworks at play between the two courts. The Eighth Circuit says that it's limited to the CSA. The Seventh Circuit says it's not. So that's my, but my point is Jones is now controlling because Oliver, but because Ruth didn't go elsewhere and Garcia didn't address the point. So Jones is not controlling on the issue that's brought before the court today. Jones was my case and in that case we argued it included analog within the Illinois statute. And because the plain language of the controlled substance offense guideline doesn't include analog, that it was overbrought. And the court limited to that specific argument said it's not overbrought or said it is not overbroad. And in fact I think Jones kind of reaffirms the holding in Sanchez-Garcia's because in Jones we had, you know, made the substance overbreadth argument and said that it didn't qualify. Now to determine whether analogs were part of the controlled substance offense definition, the Jones court looked to the CSA and said, oh under this federal statute it includes analogs and therefore it's within the definition of controlled substance offense under the guidelines. So just generally and kind of as a broad statement, these kinds of drug overbreadth substance arguments are quite frequent. And so when a court addresses that a drug statute is overbroad for one reason, it doesn't then foreclose every other potential argument that could be made. So even though... Let me just, I agree that picking precisely through these cases, it's not clear that this issue, where this issue... Not clear at all it's been decided, but doesn't it at least require us to address the conflict in the circuits in which Ruth picked the other side and mistakenly said we were already on one side or the Alternatively, if this court were to say, do we need to address this issue? As we've noted in the reply brief, the majority of circuits have found that it is limited to the CSA for good reason. There's two kind of lines of thought with that. First, it's just basically based upon Taylor, kind of the main case we have for this categorical approach, and that what is a controlled substance offense shouldn't be determined by state law. These federal sentencing enhancements shouldn't depend on state law. The other is because there's ambiguity whether what controlled substance means under the guideline definition, then the Jerome presumption comes into play. And under that, these federal guidelines should be interpreted in accordance with federal law. So again... I want to talk to you about Jones. So I think I agree with you that Jones isn't controlling because it was a different issue. But I am less convinced that Sanchez Garcia answered the question. And I'll tell you why. There's one sentence in Sanchez Garcia that bothers me. And it says something along the lines of how Sanchez, the way that Sanchez Garcia frames his argument. So it's all I know that there's then a site to all these cases that have held that the federal law is what frames the debate. But I'm very concerned that what we're doing there and not very clear words is assuming without deciding that the federal controlled substance definition applies and not the state definition. Can you make me feel any better about that? If this court wanted to say assuming without deciding, it would have done so. This court frequently does that. The court can indicate we're not going to address it. It's not conclusive to the argument we need to make. If the court wanted to be more definitive that it wasn't binding, then it would have said so. And Sanchez Garcia has been cited in a later case, Benitez de los Santos, for the principle that it's limited to the CSA for purposes of the controlled substance offense guideline. And I think it's not just the Seventh Circuit that I think has said that that's the Eighth Circuit's position. I think the Second Circuit has also indicated that the Eighth Circuit is on this side of the circuit split, which of course that's not necessarily binding. But it is indicative that this appears to be a strong holding that controlled substances under this guideline is limited to the CSA. I agree with you that that's how courts have characterized. That gets back to Judge Logan's point to a certain extent. But there's a textual difference here that I think is significant. I'm trying to figure out how much room we have to decide it, which is under the statute 924, it specifically refers to 851, I believe. So it has a specific reference to federal law. Of course, the guideline doesn't have that. And the guideline uses extremely broad language about, what is it, an offense under federal or state law, and then just gives a general definition. And so I guess my question is, textually, should there be a different rule? As far as interpretation of the guideline? As far as whether federal law actually is what controls, and not federal law, but the federal definition of controlled substance is what applies, given that there's an explicit reference in 924, which is Oliver. I was on the Oliver panel. Right. No, I think that when we're analyzing this, because it's unclear, because there's no, you know, it just says controlled substance, it doesn't say controlled substance under state law, that means it's ambiguous. And that's why Jerome presumption comes into play, and says when it's ambiguous, then we need to interpret it in accordance with federal law. I think that's also consistent with Taylor. It's also consistent with the overall just purpose of the guidelines. The guidelines are there to ensure uniformity in sentencing. If there's no, you know, really solid federal, federal standard, then you're not going to have this uniformity. And that's in the Ward Fourth Circuit case, the concurrence, the chief judge said, that's exactly what will happen. It's, you know, you could have one state which punishes a certain controlled substance, and the next state over doesn't, and could be the same conduct by two defendants with very different sentences. And that's why we need the federal standard to apply. And alternatively, harmless errors not established in that case, I don't, I've used through my time, but there are no further questions. Reversing command for resentencing is required. Judge Logan, can I just ask, I wanted to ask this quick, the harmless error actually threw me for a loop. Is it because of the indefiniteness of the judge's statement, which is actually a little incomprehensible in this context? Is that the reason why you think it doesn't apply? I think there's three reasons why this doesn't apply. The first is, I think he's relying on objective two facts. The district court makes a reference to, well, the conduct still applies. The defense counsel had objected to the narratives in the PSR, and the government didn't put on any Shepard documents to prove up these prior convictions. So there's no evidence of any conduct. Second, this misstatement, it's confusing the district court talking about prior drug trafficking offenses. That's not what the court was dealing with here. The court was trying to determine if they were controlled substance offenses. And finally, just the idea of it seems to be not an alternative sentence considering the 3553A factors. It's an alternative sentence by saying this categorical approach, you know, I know we're supposed to do this kind of technical argument, but I still think these qualify. And a point I didn't make in the brief that's instructive as well is that this statement didn't occur when the district court was pronouncing sentence, which is often when it happens, because the court is, you know, going through the 3553A factors. This came after the ruling on this guideline challenge. There were still other guideline challenges to, you know, to decide. The defendant hadn't had the chance to allocate. Counsel hadn't made arguments. So this isn't like an alternative 3553A finding. This is just saying, yes, I find they qualify, and even if I'm wrong on the categorical approach, I still think they should be. Ms. Glasgow. Thank you. May it please the court, Ms. Quick. My name is Andrea Glasgow, and I represent the United States of America in this case. I'll pick up right where we just left off, and that is harmless error. The government's position is that this case can be affirmed, oh, first the conviction should be affirmed because the evidence was more than sufficient based on both eyewitness testimony and circumstantial evidence, but also that the sentence should be affirmed both because these convictions do qualify as predicate offenses under the guidelines and because if there is any error, it was harmless. Chief Judge John Jarvis stated that he was taking into account the fact of these prior convictions. The defendant did not object to the fact of prior convictions for delivery of a controlled substance, and that is the fact that the court took into account. Counsel, you're coming across very loud. You're appropriately using your courtroom voice, but I think you could be a little more, not conversational, but just maybe move away from the mic a bit. Less strident. Don't be quite so strident. I apologize, Your Honor. Please let me know if you can't hear me. Counsel, before you move on, since you're on harmless error, I just thought I'd ask a question. I actually read Judge Jarvis. I didn't know about the timing and that it happened before he had finished pronouncing the sentence, but I read him as saying, I understand that if these are not qualifying offenses, I think they should be. I mean, that's literally, I think, what he says, and I don't read that as a harmless error pronouncement. The timing is off. The language is a little incomprehensible. It may well be what he meant. I'll give you that, but help me understand where he says, I understand that these are non-qualifying offenses or could be non-qualifying offenses. I would give the exact same sentence because I don't see that anywhere. Your Honor, so I'm looking at page four of the sentencing transcript where the court states, so I find paragraphs 46 and 47 provide the support for the base offense level of 20 under the sentencing guidelines or rather 24 rather. Both of those felony drug trafficking offenses qualify, and if for some reason they didn't, I would still apply them as the conduct that the guidelines are addressing. That is, someone who possesses a firearm after being convicted of a drug trafficking offense is someone of more concern to the court than someone who hasn't, and here he clearly has been convicted of those offenses, and I think from that statement, Your Honor, Judge Jarvis was stating that whether or not they technically qualify, as Ms. Quick said, the cases on this that delivery of a controlled substance under both Iowa and Illinois law, which come before this court frequently, are drug trafficking offenses at their very core. He's not using a term of art there. He's using what they are. It's the traffic. That's my concern. My concern is exactly what you're saying. I don't know what he means, but that latter concern you gave me, which these are drug trafficking offenses no matter what, and I'm going to consider them, concerns me, but maybe you're better at reading his mind or reading those words than I am, but I just don't see I would have imposed the same sentence anyway. I mean, I don't want to belabor the point because I think you have stronger arguments, frankly, on the statutory and categorical, but I just don't. I guess I don't see the same thing in them that you do. Your Honor, I won't belabor it either. I will just say I think that in the context, that's what Judge Jarvis was saying, is that when a defendant possesses a firearm after they have previously been twice convicted of trafficking drugs, the court is more concerned with that and they find that an aggravating factor for sentencing, and I think that's what the court is saying there, but moving then to the interpretation of the guidelines, I think what was being insinuated earlier or gotten to earlier is exactly the government's position, is that the analysis under Section 851 enhancement is different than the analysis under the guidelines, and that's because the statutory enhancement under Section 851 refers to the Controlled Substances Act, and it is therefore following the definition under the Controlled Substances Act. The guidelines definition makes no such reference, and certainly, as is pointed out in several of the cases, the Sentencing Commission knows how to make a cross-reference, and in fact, in the same definitional application note, the Guidelines Commission did make cross reference to statute, and so if the intent was that the Controlled Substances Act definition be controlling, then certainly the Commission could have stated that. Additionally, the fact that the guidelines definition does include state offenses is telling because they are saying, we are including state offenses for controlled substance offenses, and so that's the statute. I agree with you textually. There's a difference between the two. You're going to have to help me with Sanchez-Garcia, because in my mind, and I'm only speaking for myself, the government probably loses if Sanchez-Garcia controls on this point, and if it doesn't, the government may well win. Well, Your Honor, I had picked out the same quote that was previously stated, and that is that in that case, in the holding of the court, in the opinion of the court, the court specifically said that this is the way Mr. Sanchez-Garcia framed the issue. The court was going based on how Mr. Sanchez-Garcia framed the issue, and he still lost, and that was the way that the court was going, is even if we agree with you, you still lose, and so the question of whether the Controlled Substances Act definition was controlling for purposes of the guidelines was not before the court in Sanchez-Garcia, and I think that reading that opinion is clear that that was not being decided or held, that the court was simply stating that's how Mr. Sanchez-Garcia framed the issue, and even taking it as he framed it, he still loses. So for those reasons, we don't believe Sanchez-Garcia is binding on this court. We believe that Ruth, out of the Seventh Circuit, and Ward, out of the Fourth Circuit, both have persuasive analysis on this topic, that the inclusion of state offenses in the guidelines, the lack of reference to the Controlled Substances Act definition, are reasons to suggest that that's not the definition. Counsel, do you acknowledge that your position is asking us to leap to the minority side of the conflict? I believe so, Your Honor. Okay. No, you know, that's fair game. That's what conflicts are about. Well, and I think that the thing to consider is what makes sense in this area, and I disagree with what was said before. I think that's the point that Judge Jarvie was getting at, is there is a reason for consideration of what conduct is being dealt with here. It's not a statutory enhancement that requires the court to enhance the sentence. It's a guidelines provision, which states that a recidivist, someone who has committed prior substance offenses, is more dangerous than when they possess a firearm. And that's exactly the case that we have here. Because we believe that the evidence was sufficient based on both eyewitness testimony and circumstantial evidence, and because we believe that Mr. Henderson's prior convictions are controlled substance offenses for the purposes of the guidelines calculation, and alternatively, that it was harmless error as Judge Jarvie indicated when he was handing down the sentence, we believe both Mr. Henderson's conviction and his sentence should be affirmed. If there are no further questions, I will yield the remainder of my time. Very good. Well, I think a focusing argument on the sentencing issues was the right way to go this morning, and obviously the sufficiency, the evidence issues are still there, and we'll take them on the brief and consider them fully. And we thank counsel for good, helpful arguments, and we'll take the case under advisement.